# Waln's Estate. Vaux's Appeal.

*Will—Revocation of legacy—Distribution—Intestacy.*

Where part of a residuary legacy is revoked without a substitutionary gift, the amount passes to the next of kin, and not to the other residuary legatees.

Testator in his will left the residue to his sisters and his brother Edward. By a codicil he directed: "I revoke my bequest to my brother Edward as he is not living." *Held,* that the amount of the legacy revoked should be distributed to testator's next of kin and not to the other residuary legatees.

Argued March 28, 1893. Appeal, No. 282, Jan. T., 1893, by Mary W. Vaux, late Waln, et al., from decree of O. C. Phila. Co., April T., 1892, No. 379, distributing estate of Henry Lisle Waln, deceased. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ.

Adjudication of executor's account.

From the adjudication of HANNA, P. J., it appeared that Henry Lisle Waln died April 8, 1891, having made his will dated April 7, 1882, which, after certain legacies, provided: " The rest, residue and remainder of my estate, real and personal, I devise and bequeath to my sisters Mary, Sallie, Ellen and Annie, and my brother Edward, in equal shares." He had then no other brothers or sisters living. Ellen died May 26, 1887, unmarried and without issue. Edward died in October, 1887, leaving several children surviving him. Testator on January, 1890, made a codicil as follows: " I revoke my bequest to my brother Edward, as he is not living." The fund in question is that part of testator's residuary estate which would have passed under the residuary clause to Edward had he lived. The auditing judge awarded it to his surviving sisters. Edward's children claimed that one fourth of it should have been awarded to them. They excepted to the adjudication, and thereupon the orphans' court sustained their exceptions and decreed one fourth to them, in an opinion by HANNA, P. J., 2 Dist. R. 102.

Edward's surviving sisters thereupon took this appeal.

*Errors assigned* were (1–6) in sustaining exception to adjudication, quoting them.

*Geo. L. Crawford, Henry C. Loughlin* with him, for appellants.—A codicil expressly revoking a gift of a share of the residue, for the expressed reason of the death of the object of it, does so amend the residuary clause as of the date of the codicil, as if the lapsed gift had never been written in the residuary clause: Williams v. Neff, 52 Pa. 326 ; Gray's Est., 29 W. N. 219; Cresswell v. Cheslyn, 2 Eden, 123 : Skrymsher v. Northcote, 1 Swanston, 565 ; Harris v. Davis, 1 Coll. Ch. 416 ; Jarman on Wills, *171.

*Richard C. Dale, Roland Evans* with him, for appellees.—By the codicil there is shown merely an intention to revoke the gift. Being thus left undisposed of, and the gift a specific share of the residue, testator died intestate as to this share, and the next of kin are entitled to take: Gray's Est., 147 Pa. 67 ;

Act of May, 1844, § 2, Purd. 1711, P. L. 15 ; Williams v. Neff, 52 Pa. 326 ; 3 Jarman on Wills (Am. ed., notes by Randolph & Talcott), p. 17 ; DeSilver's Est., 142 Pa. 74 ; Reed's Est., 82 Pa. 428 ; Simmons v. Rudall, 1 Sim. N. R. 115 ; Skrymsher v. Northcote, 1 Swanst. 566 ; Cresswell v. Cheslyn, 2 Eden, 123.

OPINION BY MR. JUSTICE MITCHELL, July 19, 1893 :

It is conceded that the share of the residuary bequest left to testator's sister Ellen having lapsed by her death during his lifetime, he died intestate as to that, and it goes to his next of kin and not to the other residuary legatees. The only question therefore is whether the share of Edward follows the same course. Is there any substantial difference in regard to its effect, between a lapsed or a void residuary bequest, and one expressly revoked?

The English cases apply the same rule to both. Thus in Cresswell v. Cheslyn, 2 Eden, 123, the testator appointed his daughter Mary one of the residuary legatees, but afterwards by a codicil revoked that appointment. The other residuary legatees claimed that their shares were thereby increased, and the argument was expressly made that a codicil is a republication of the will, which should be construed as if then rewritten with the revoked legacy omitted. Logically it is difficult to escape this conclusion, but Lord Chancellor NORTHINGTON held that it could not prevail, saying, " the testator has made no new devise, by the codicil, of the share which he has revoked from his daughter Mary, and therefore the sons can have no greater interest than they had by the original will." This decision met with criticism, but does not seem ever to have been modified. On the contrary in Skrymsher v. Northcote, 1 Swanst. 566, where there was also an express revocation by codicil of part of the residuary bequest, Sir Thomas PLUMER, M. R., held that the revoked share went to the next of kin, and in his opinion, after stating the rule, using the general word " fails " in connection with the disposition, he gives an illustration of a lapse, without taking any notice of a distinction between a lapse and an express revocation, which was the case before him. The rule, as he expresses it, is that " part of the residue of which the disposition *fails* will not accrue in augmentation of the remaining parts, as a residue of a residue,

but instead of resuming the nature of residue, devolves as undisposed of." And this whether the failure arises because the gift is void, or lapsed, or revoked.

The English rule, as we said in Gray's Estate, 147 Pa. 67, does not commend itself to sound reasoning, or to the preservation of the testator's actual intent, but we found it recognized and accepted in our own cases before these particulars in its application arose, and we felt ourselves bound by it. The distinction between lapse and revocation, though logically clear, is thin, and especially so in the present case where the lapse is expressly assigned by the testator as the reason for the revocation. It has little practical bearing on what should be the only object of testamentary construction, the actual intent of the testator. As we said in Gray's Estate, supra, we think it better not to draw subtle distinctions but to let the rule stand entire, as it was left by our predecessors.

Decree affirmed.